UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LAWRENCE L. SINSEL, JR. and BEATRICE L. SINSEL, Individually and on Behalf of All Others Similarly Situated, <br><br>                      Plaintiffs, <br><br>        v. <br><br> UROPLASTY, INC., DAVID B. KAYSEN, and MAHEDI A. JIWANI, <br><br>                  Defendants. | No. <br><br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiffs Lawrence L. Sinsel, Jr. and Beatrice L. Sinsel (collectively, "Plaintiffs"), by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by UROPLASTY, INC. ("UPI" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by UPI; and (c) review of other publicly available information concerning UPI.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of purchasers of UPI's securities between July 26, 2012 and June 13, 2013, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     UPI is a medical device company that engages in the development, manufacture and marketing of products for the treatment of voiding dysfunctions, including treatment of overactive bladder.

3.     On June 14, 2013, the Company announced that it was delaying the filing of its annual report on Form 10-K for the year ended March 31, 2013, until the completion of a review of its internal control over financial reporting.  According the Company, in connection with a review of employee expense reimbursements conducted at the direction of the Audit Committee of the Company's board of directors, the Company uncovered "issues related to the internal controls surrounding the employee expense reimbursement approval process," in addition to "issues in internal control related to the

recognition of orders and the payment of sales commissions at the end of fiscal quarters." The Company further disclosed it has placed its chief financial officer on administrative leave pending completion of the internal control review.

4.     On this news, shares of UPI declined $0.26 per share, or 10.48%, to close on June 14, 2013, at $2.22 per share, on heavy trading volume.

5.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company lacked adequate internal and financial controls; and (2) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C.§§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or

the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. Additionally, Defendant's principal executive offices are located within this Judicial District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiffs Lawrence L. Sinsel, Jr. and Beatrice L. Sinsel, as set forth in the accompanying certification, incorporated by reference herein, purchased UPI common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant UPI is a Minnesota corporation with its principal executive offices located at 5420 Feltl Road, Minnetonka, Minnesota 55343.

13. Defendant David B. Kaysen ("Kaysen") was, at all relevant times Chief Executive Officer ("CEO") and President of the Company.

14. Defendant Mahedi A. Jiwani ("Jiwani") was, at all relevant times, Chief Financial Officer ("CFO") of the Company.

15. Defendants Kaysen and Jiwani are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of UPI's reports to the SEC, press releases and

3

presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

16.   UPI is a medical device company that engages in the development, manufacture and marketing of products for the treatment of voiding dysfunctions, including treatment of overactive bladder.

### Materially False and Misleading
### Statements Issued During the Class Period

17.   The Class Period begins on July 26, 2012.   On this day, the Company issued a press release entitled, "Uroplasty Reports Fiscal First Quarter 2013 Financial Results."   Therein, the Company, in relevant part, stated:

Uroplasty, Inc. (NASDAQ: UPI), a medical device company that develops, manufactures and markets innovative proprietary products to treat voiding dysfunctions,

4

today reported financial results for the first quarter of fiscal 2013 ended June 30, 2012.

Global sales grew 20% to $5.6 million for the first quarter of fiscal 2013, compared with $4.7 million in the fiscal first quarter a year ago. Sales in the U.S. increased 40%, driven by a 64% increase in sales of the Urgent® PC Neuromodulation System. U.S. sales of Macroplastique were up 16% from the prior year.

Sales and other key metrics related to Urgent PC in the U.S. continued to demonstrate sequential quarterly progress in the fiscal first quarter of 2013. Sales in the first quarter totaled $2.5 million, 9% over $2.3 million in sales in the fiscal fourth quarter of 2012. The number of active customers of Urgent PC in the U.S increased sequentially to 577 in the first quarter compared with 538 in the fourth quarter of fiscal 2012. The Company sold 3,283 lead set boxes in the fiscal first quarter compared with 3,023 in the fiscal fourth quarter of 2012. Utilization in the fiscal first quarter increased to 5.7 lead set boxes per active customer compared with 5.6 in the fourth quarter.

18.     On July 26, 2012, UPI filed its Quarterly Report on Form 10-Q with the SEC for the 2013 fiscal first quarter.  The Company's Form 10-Q was signed by Defendants Kaysen and Jiwani, and reaffirmed the Company's statements that same day.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Kaysen and Jiwani, who certified:

1.     I have reviewed this report on Form 10-Q for the quarterly period ended June 30, 2012 of Uroplasty, Inc. (the "Registrant");

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

5

4.    The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record,

process, summarize and report financial information; and

b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

19.  On October 25, 2012, the Company issued a press release entitled, "Uroplasty Reports Fiscal Second Quarter 2013 Financial Results." Therein, the Company, in relevant part, stated:

Uroplasty, Inc. (NASDAQ: UPI), a medical device company that develops, manufactures and markets innovative proprietary products to treat voiding dysfunctions, today reported financial results for the second quarter of fiscal 2013 ended September 30, 2012.

Global sales grew 15% to $5.7 million for the second quarter of fiscal 2013, compared with $5.0 million in the fiscal second quarter a year ago. Sales in the U.S. increased 23%, driven by a 38% increase in sales of the Urgent® PC Neuromodulation System. U.S. sales of Macroplastique were up 4% from the prior year.

"The fiscal second quarter results continued to demonstrate the success of our efforts with Urgent PC sales in the U.S.," said David Kaysen, President and CEO of Uroplasty. "The number of active Urgent PC customers in the U.S increased sequentially in the second quarter to a record 648 from 577 in the fiscal first quarter. Additionally, we sold 3,576 lead set boxes in the fiscal second quarter compared with 3,283 in the fiscal first quarter."

U.S. Urgent PC Sales in the fiscal second quarter totaled $2.7 million, up from $2.5 million in the fiscal first quarter of 2013. Just as the quarter ended, Noridian, one of the Regional Medicare carriers, expanded coverage of Urgent PC treatments from twelve months to two years for the 3.6 million covered Medicare lives in its jurisdiction. This change in policy was the result of a review of published data, showing the positive results of using Urgent PC over a 24-month period. Noridian provides Medicare services in Alaska, Arizona, Idaho, Montana, North Dakota, Oregon, South Dakota, Utah, Washington, and Wyoming. Uroplasty also benefited from published reimbursement coverage policies for percutaneous tibial nerve stimulation (PTNS) treatments by private insurance carriers EmblemHealth, covering approximately 2.1 million lives in New York and New Jersey, and ConnectiCare, covering approximately 228,000 lives in Connecticut.

7

"In addition to continued expansion of reimbursement, we have had further positive clinical data released on Urgent PC. The 3-year STEP Study data was presented for the first time at the Western Section American Urological Association conference in Hawaii earlier this month. This multi-center study demonstrated that patients who respond to the initial 12 weeks of Urgent PC therapy sustained their symptom improvement over 3 years," said Mr. Kaysen.

Macroplastique sales in the U.S. totaled $1.4 million in the fiscal second quarter, up 4% over the same quarter last year. "Over the past year, we have successfully built our share in the bulking market and during fiscal 2013 we anticipate steady sales from Macroplastique," Mr. Kaysen commented.

Net sales to customers outside of the U.S. for the fiscal second quarter totaled $1.5 million, a decrease of 3% from the prior fiscal year's second quarter. Excluding the impact of fluctuations in foreign currency exchange rates, total sales outside the U.S. were up 6%. Urgent PC sales outside of the U.S. of $510,000 increased 31% from $389,000 in the prior fiscal year's second quarter. Excluding the impact of fluctuations in foreign currency exchange rates, Urgent PC sales increased 40%.

The Company reported an operating loss of $642,000 in the fiscal second quarter, compared with a $1.3 million operating loss in the same quarter last year. Excluding non-cash charges for share-based compensation and depreciation and amortization expense, the non-GAAP operating loss was $163,000 in the second quarter of fiscal 2013, compared with an $837,000 non-GAAP operating loss in the second quarter a year ago. The decrease in operating loss was primarily attributable to the increase in sales and improved gross margin, which more than offset the increase in operating expenses.

20.     On October 25, 2012, UPI filed its Quarterly Report on Form 10-Q with the SEC for the 2013 fiscal second quarter.  The Company's Form 10-Q was signed by Defendants Kaysen and Jiwani, and reaffirmed the Company's statements announced that same day.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Kaysen and Jiwani, substantially similar to the certifications contained in ¶18, *supra*.

21.     On January 24, 2013, the Company issued a press release entitled, "Uroplasty Reports

Fiscal Third Quarter 2013 Financial Results."  Therein, the Company, in relevant part, stated:

> Uroplasty, Inc. (NASDAQ: UPI), a medical device company that develops, manufactures and markets innovative proprietary products to treat voiding dysfunctions, today reported financial results for the third quarter of fiscal 2013 ended December 31, 2012. The Company also announced the completion of a purchase agreement for both Urgent PC and Macroplastique with KP Select, Inc., which provides contract management services for all Kaiser Permanente and affiliated health care facilities.

> **Fiscal Third Quarter 2013 Financial Results**

> Global sales grew 5% to $5.6 million for the third quarter of fiscal 2013, compared with $5.3 million in the fiscal third quarter a year ago. Sales in the U.S. increased 15%, driven by a 37% increase in sales of the Urgent® PC Neuromodulation System.

> The Company sold 3,501 lead set boxes to 620 active Urgent PC customers in the U.S. in the fiscal third quarter compared with 648 active customers and 3,576 lead set boxes sold during the fiscal second quarter. This is the second consecutive year the Company has experienced a sequential quarterly flattening in these metrics, and management believes the decrease reflects the seasonal slowdown in initiation of treatments by new patients.

> "Sales of Urgent PC in the fiscal third quarter ended December were affected by a slowdown in new patient volume during the holiday season that began in mid-November and persisted through the end of the calendar year," said David Kaysen, President and CEO of Uroplasty. "However, we are optimistic about the product's continued growth and expect the sales momentum to pick up in the fiscal fourth quarter, as new patients commit to the procedure and as we continue to make inroads into penetrating existing accounts and bringing in new customers."

> U.S. Urgent PC Sales in the fiscal third quarter of 2013 totaled $2.7 million, up from $2.0 million in the fiscal 2012 third quarter. Macroplastique sales in the U.S. totaled $1.4 million in the recent fiscal third quarter, a decrease of 12% over the same quarter last year, reflecting the emphasis of sales representatives on driving sales of Urgent PC.

> Net sales to customers outside of the U.S. for the fiscal third quarter totaled $1.5 million, a decrease of 16% from the fiscal third quarter last year. Excluding the impact of fluctuations in foreign currency exchange rates, total sales outside the U.S. were down 14%. Urgent PC sales outside of the U.S. were $556,000 compared with $581,000 in the prior fiscal year's third quarter.

9

The Company reported a gross margin of 86.9% in the recent fiscal third quarter compared with 85.5% in the same quarter a year ago. The operating loss of $677,000 in the fiscal third quarter compares with a $1.1 million operating loss in the same quarter last year. Excluding non-cash charges for share-based compensation and depreciation and amortization expense, the non-GAAP operating loss was $135,000 in the third quarter of fiscal 2013, compared with a $570,000 non-GAAP operating loss in the third quarter a year ago. The decrease in operating loss was primarily attributable to the increase in sales, an improved gross margin, and a decrease in operating expenses.

22.     On January 24, 2013, UPI filed its Quarterly Report on Form 10-Q with the SEC for the 2013 fiscal third quarter. The Company's Form 10-Q was signed by Defendants Kaysen and Jiwani, and reaffirmed the Company's statements announced that same day. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Kaysen and Jiwani, substantially similar to the certifications contained in ¶18, *supra*.

23.     On May 30, 2013, the Company issued a press release entitled, "Uroplasty Reports Fiscal Fourth Quarter And Full Year 2013 Financial Results." Therein, the Company, in relevant part, stated:

> Uroplasty, Inc. (NASDAQ: UPI), a medical device company that develops, manufactures and markets innovative proprietary products to treat voiding dysfunctions, today reported financial results for the fourth quarter and fiscal year 2013 ended March 31, 2013.
>
> **Fiscal Fourth Quarter 2013 Financial Results**
>
> Fiscal fourth quarter 2013 sales in the U.S. increased 2%, driven by an 11% increase in sales of the Urgent® PC Neuromodulation System, compared with fiscal fourth quarter a year ago. Global sales declined 1% to $5.5 million in the fourth quarter of fiscal 2013, compared with $5.6 million in the fiscal fourth quarter a year ago.
>
> U.S. Urgent PC Sales in the fiscal fourth quarter of 2013 were $2.6 million. Macroplastique sales in the U.S. totaled $1.4 million in the recent fiscal fourth quarter, a decrease of 13% over the same quarter last year.

The Company sold 3,365 lead set boxes to 581 active Urgent PC customers in the U.S. in the fiscal fourth quarter compared with 3,501 lead set boxes to 620 active customers during the fiscal third quarter.

"While sales of Urgent PC in the U.S. increased year over year, we were disappointed with our progress," said Rob Kill, Interim Chief Executive Officer of Uroplasty. "We are executing our strategy to reinvigorate and regain the momentum of Urgent PC sales, especially in the U.S. By mid-May, under our new sales leadership, we had replaced sales representatives in six territories. We are focused on finding sales representatives with experience in medical device sales, a solid understanding of their regional markets and strong relationships with physician groups in their territories. By end of June we expect to have 45 total sales representatives in place."

Net sales to customers outside the U.S. for the fiscal fourth quarter totaled $1.5 million, compared to $1.6 million in the fiscal fourth quarter last year. Excluding the impact of fluctuations in foreign currency exchange rates, sales outside the U.S. were down 7%.

The Company reported a gross margin of 86.5% in the recent fiscal fourth quarter compared with 85.9% in the same quarter a year ago. The operating loss of $968,000 in the fiscal fourth quarter compares with a $589,000 operating loss in the same quarter last year. Excluding non-cash charges for share-based compensation and depreciation and amortization expense, the non-GAAP operating loss was $477,000 in the fourth quarter of fiscal 2013, compared with a $122,000 non-GAAP operating loss in the fourth quarter a year ago. The increase in operating loss was primarily attributable to the decrease in sales and an increase in operating expenses.

24.     The statements contained in ¶¶17-23, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company lacked adequate internal and financial controls; and (2) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.   Uroplasty, Inc. (NASDAQ: UPI), a medical device company that develops, manufactures and markets innovative products to treat voiding dysfunctions, announced today that it will delay the filing of its Annual Report on Form 10-K for the year ended March 31, 2013, until the completion of a review of its internal control over financial reporting.

**Disclosures at the End of the Class Period**

25.     On June 14, 2013, the Company issued a press release entitled, "Uroplasty Announces Delay in Filing Form 10 K; Chief Financial Officer on Administrative Leave."   Therein, the Company, in relevant part, stated:

> In connection with a review of employee expense reimbursements conducted after the end of the fiscal year, the Company uncovered limited issues related to the internal controls surrounding the employee expense reimbursement approval process. The Company preliminarily concluded that these issues were unlikely to materially affect its financial statements. However, as a result of this review, the Company later uncovered issues in internal control related to the recognition of orders and the payment of sales commissions at the end of fiscal quarters. The Company concluded that further review was advisable. The review is being conducted at the direction of the Audit Committee of the Board of Directors of the Company, with the assistance of independent advisors.

> Based upon facts available, the Company does not currently believe that a material revision of its previously released earnings is likely. However, the review of internal control issues has not been completed and the Company is unable at this time to fully assess the potential impact on its financial statements.

> The Company has placed Mahedi Jiwani, its Chief Financial Officer, on administrative leave pending completion of the internal control review.

26.     On June 14, 2013, UPI filed a Notification of Late Filing on Form 12b-25 with the SEC.   Therein, the Company, in relevant part, stated:

> In connection with a review of employee expense reimbursements conducted after the end of its fiscal year (March 31, 2013), the Registrant uncovered limited issues of internal control related to the employee expense reimbursement approval processes. The Registrant preliminarily concluded that these issues were unlikely to materially affect its financial statements. However, as a result of this review, the Registrant later uncovered issues in internal control related to the recognition of orders and the payment of sales commissions at the end of fiscal quarters. The Registrant concluded that further review was advisable. The review is being conducted at the direction of the Audit Committee of the Board of Directors of the Registrant, with the assistance of

12

independent advisors.

Based upon facts available, the Registrant does not currently believe that a material revision of its financial results is likely. However, the review of internal control issues has not been completed and the Registrant is unable at this time to fully assess the potential impact on its financial statements. Because it is unable to fully assess the impact on its financial statements, the Registrant is unable to timely file its Annual Report on Form 10-K.

27.     On this news, shares of UPI declined $0.26 per share, or 10.48%, to close on June 14, 2013, at $2.22 per share, on heavy trading volume.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased UPI's securities between July 26, 2012 and June 13, 2013, inclusive (the "Class Period") and who were damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, UPI's securities were actively traded on the NASDAQ Stock Exchange (the "NASDAQ").   While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.   Millions of UPI shares were traded publicly during the Class Period on the NASDAQ.   As of January 22, 2013, the Company had 21,015,582 shares of common stock outstanding.   Record owners and other members of the Class may be identified from

records maintained by UPI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of UPI; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done

14

to them.   There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

34.     The market for UPI's securities was open, well-developed and efficient at all relevant times.   As a result of these materially false and/or misleading statements, and/or failures to disclose, UPI's securities traded at artificially inflated prices during the Class Period.   Plaintiffs and other members of the Class purchased or otherwise acquired UPI's securities relying upon the integrity of the market price of the Company's securities and market information relating to UPI, and have been damaged thereby.

35.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of UPI's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.   Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about UPI's business, operations, and prospects as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about UPI's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and

artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

37.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

38.     During the Class Period, Plaintiffs and the Class purchased UPI's securities at artificially inflated prices and were damaged thereby.   The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## SCIENTER ALLEGATIONS

39.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding UPI, his/her control over, and/or receipt and/or modification of UPI's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning UPI, participated in the fraudulent scheme alleged

16

herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

40.     The market for UPI's securities was open, well-developed and efficient at all  relevant

times.  As a result of the materially false and/or misleading statements and/or failures to disclose, UPI's

securities traded at artificially inflated prices during the Class Period.  On July 26, 2012, the

Company's stock closed at a Class Period high of $4.32 per share.  Plaintiffs and other members of

the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the

market price of UPI's securities and market information relating to UPI, and have been damaged

thereby.

41.     During the Class Period, the artificial inflation of UPI's stock was caused by the material

misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by

Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants

made or caused to be made a series of materially false and/or misleading statements about UPI's

business, prospects, and operations.   These material misstatements and/or omissions created an

unrealistically positive assessment of UPI and its business, operations, and prospects, thus causing the

price of the Company's securities to be artificially inflated at all relevant times, and when disclosed,

negatively affected the value of the Company stock.  Defendants' materially false and/or misleading

statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the

Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

42.     At all relevant times, the market for UPI's securities was an efficient market for the

following reasons, among others:

(a)     UPI stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, UPI filed periodic public reports with the SEC and/or the NASDAQ;

(c)     UPI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

43.     (d)     UPI was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for UPI's securities promptly digested current information regarding UPI from all publicly available sources and reflected such information in UPI's stock price. Under these circumstances, all purchasers of UPI's securities during the Class Period suffered similar injury through their purchase of UPI's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The

18

statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful caUPIonary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of UPI who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

46.     Plaintiff's repeat and reallege each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase UPI's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue

statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for UPI's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about UPI's financial well-being and prospects, as specified herein.

50.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of UPI's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about UPI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

51.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors

at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

52.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing UPI's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of UPI's securities was

artificially inflated during the Class Period.   In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired UPI's securities during the Class Period at artificially high prices and were damaged thereby.

54.      At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.   Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that UPI was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their UPI securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.      By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

57.      Plaintiffs repeat and reallege each and every allegation contained above as if fully set

forth herein.

58.     The Individual Defendants acted as controlling persons of UPI within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, UPI and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class

Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal

Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff s and the other Class members

against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff s and the Class their reasonable costs and expenses incurred in this

action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.


DATED: July 11, 2013

REINHARDT, WENDORF & BLANCHFIELD

   S/Garrett D. Blanchfield
Garrett D. Blanchfield, #209855
E-1250 First National Bank Bldg.
332 Minnesota St.
St. Paul, MN 55101
Telephone: (651) 287-2100
Facsimile: (651) 287-2103
E-mail: info@ralawfirm.com

24

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiffs*